UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No.   21-cr-143 (RC) |
| BENJAMIN TORRE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Benjamin Torre, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mr. Torre is a 24 year old young man who has lived a simple, law abiding life up until the instant offense. He is among the least culpable group of defendants who walked into the Capitol building, had no confrontation with law enforcement, and walked out with no incident after 15 minutes. Most notably, he went inside the Capitol building long after the Capitol had already been breached. Mr. Torre has sincerely accepted responsibility for his conduct, so much so that he voluntarily spoke to the FBI before he was even charged for his conduct. Based on all of the factors discussed below, Mr. Torre respectfully requests that the Court impose a period of probation of 12 months.

1

## BACKGROUND

Mr. Torre entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G) for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mr. Torre, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. Mr. Torre did not participate in any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building. Mr. Torre will appear for sentencing on July 7, 2022. He has reviewed the Pre-Sentence Investigation Report and does not have any further objections to its contents.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

(a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. §3553(a).

> II. **Imposing a Sentence of Twelve Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

### a. Mr. Torre's Personal History and Characteristics

Mr. Torre was born in Cumming, Georgia and is the middle child of four siblings.  He has lived in Georgia all of his life and grew up in a tight knit and supportive family.  Mr. Torre was homeschooled all throughout high school, however still participated in many extracurricular activities.  He played soccer, basketball, did cross country running, competitive swimming.  Mr. Torre also participated in many volunteer activities and was part of the Boy Scouts of America, where he earned the rank of Eagle Scout.  Lastly, he was part of the Civil Air Patrol.

After obtaining his high school diploma, Mr. Torre went to Lanier Technical College, where he earned a Phlebotomy Technician certificate as well as a marine

engine technology certificate. For the past several months, Mr. Torre has been working as an assistant service manager at Skiers Marine.

When he was arrested for the instant offense, he was working at the GAP, however was fired when his employer learned of the charges against him. Prior to working at the GAP, Mr. Torre worked at Cumming Aquatic Center as a swimming instructor, lifeguard, and shift manager. His mother describes him as "very motived" and "passionate about his job." *See* PSR ¶42.

On January 6, 2021, Mr. Torre traveled to Washington, D.C. to attend the rally. He had no prior intent to enter the Capitol building.

### b. Nature and Circumstances of the Offense

Mr. Torre accepted responsibility for the offense as soon as law enforcement interviewed him after he returned home from Washington, D.C. He admitted that he entered inside the Capitol Building after being told that there would be a peaceful protest there after the rally.[2] The former President told his supporters that they would go down to the Capitol *together* as he said, "we're going to walk

---

[2] For an hour, President Trump encouraged his supporters to "fight" for him. He said, "We will not let them silence your voices…*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them…[if the election is certified], you will have an illegitimate president. That's what you'll have. And *we* can't let that happen…And *we* fight. *We* fight like hell. And if you don't fight like hell, you're not going to have a country anymore." *See* Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial*, NPR (Feb. 10, 2021), available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

down to the Capitol."[3] Mr. Torre entered from the west side of the building and climbed through a window at around 3:00pm.

While inside the building for 15 minutes, Mr. Torre did not have any confrontation with law enforcement, did not destroy anything, and had no idea what had transpired just an hour before he arrived. This conduct was so completely out of Mr. Torres's good character that he has exhibited for the past 24 years. He is loved and respected by his friends and family, and teacher, who all describe him to be "honest, respectful, an exceptional student, trustworthy, and a generous" individual. *See* Exhibit 1, Letters of Support.

After January 6, 2021, Mr. Torre has been nothing but embarrassed for his conduct. He was fired from a job because of it and has been shamed by the media in his local community. Mr. Torre accepted responsibility early on and recently met with the FBI again to answer more questions pursuant to his plea agreement.

Mr. Torre has expressed true remorse throughout this entire process and his continued remorse is further reflected in his statement to probation where he states that he:

> "Engaged in the offense out of ignorance and is aware of the consequences of his actions, and he wishes it never happened….and is assured that he has learned his lesson."

*See* PSR ¶26.

---

[3] Id.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

The request for twelve months' probation acknowledges the need to promote respect for the law and provide just punishment. Mr. Torre has now been on supervision for over a year and has an almost perfect record of compliance. He has also been adequately deterred from any future conduct and his likelihood to reoffend is almost non-existent given his background and history as well as his compliance on supervision. United States Probation also agrees that a sentence of probation is appropriate. *See* ECF No. 36.

Furthermore, a sentence of 12 months' probation is in line with similar past sentences imposed. For example, in *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) the court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, and left when asked to do so by law enforcement.[4]

Although Mr. Torre's conduct is unique, his case shares similarities to *United States v. Jeffrey Witcher*, 1:21-cr-235 (RC), where the Court sentenced the defendant to 12 months' probation. Like *Witcher*, Mr. Torre also only spent 15 minutes inside the Capitol, and then subsequently interviewed with FBI providing an honest account of his actions.

---

[4] *See also U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (sentenced to 24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (sentenced to 12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (sentenced to 12 months' probation); *U.S. v. Jordan Stotts*, 21-CR-272 (TJK), (sentenced to 24 months' probation).

In light of the 3553(a) factors, the likelihood of recidivism for an individual like Mr. Torre is virtually non-existent.  General deterrence has also been served as the whole world has already seen the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge.

## CONCLUSION

For the reasons stated above, Mr. Torre respectfully requests that the Court impose 12 months' probation.  Mr. Torre also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org